UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY BALDIZZI

CASE NO.   8:16-cr- 271 T 35 AEP
18 U.S.C. § 371
18 U.S.C. § 1347
18 U.S.C. § 1957
18 U.S.C. § 1001
42 U.S.C. § 1320a-7b(b)(1)(A)
18 U.S.C. § 982 - forfeiture

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**
**(Conspiracy)**

SEALED

### A.  Introduction

At times material to this Indictment:

1.      Anthony Baldizzi was a licensed medical doctor who resided and practiced medicine in the Middle District of Florida.  As part of his practice, Dr. Baldizzi prescribed compounded creams to patients who were directed to fill these prescriptions at Lifecare Pharmacy.  Many of these compounded creams were marketed by Centurion Compounding, Inc., for whom Dr. Baldizzi served as an "in network" physician.

2.      Pharmland LLC, d/b/a Lifecare Pharmacy (Lifecare), was a retail and compounding pharmacy located in Pinellas County in the Middle District of Florida

co-owned and operated by C.M. and B.N.   Lifecare produced compounded creams for scars, pain, and other ailments, among other things.   Lifecare billed TRICARE, Medicare, and other health care benefit programs for these creams, each of which typically ranged in price from approximately $900 to $21,000 for a one-month supply.   Lifecare was engaged in a marketing relationship with Centurion Compounding, Inc. pursuant to which Lifecare paid Centurion a kickback of approximately 50% of each claim paid by TRICARE, Medicare, or other health care benefit programs, minus expenses, for each prescription sent to Lifecare by Centurion.

      3.     Centurion Compounding, Inc. (Centurion) was a marketing firm located in Pasco County in the Middle District of Florida co-owned and operated by F.M. and K.A.   Centurion employed sales representatives as independent contractors to market compounded medications, specifically creams for pain and scars, among others, to beneficiaries of health care benefit programs. Centurion focused its promotional efforts on TRICARE beneficiaries based upon an understanding and belief that TRICARE would pay claims for these compounded creams.   Centurion directed the patients it recruited and the physicians in its network to send all of their prescriptions for these compounded creams to Centurion, which transmitted the prescriptions to Lifecare to be filled. Centurion paid its sales representatives a percentage of the paid claims it received from Lifecare, which ranged from 15-30% of the total claim amount after expenses.

4.     TRICARE was a federal health insurance program that provided coverage for U.S. military members, retirees, and their family members. TRICARE was a federal health care benefit program, as defined by Title 18, United States Code, Section 24(b).   Individuals who received benefits from TRICARE were commonly referred to as TRICARE beneficiaries.

5.     Medicare was a federal health insurance program that provided coverage for people 65 and older, people under 65 with certain disabilities, and people of all ages with end-stage renal disease.   Medicare was a health care benefit program as defined by Title 18, United States Code, Section 24(b). Individuals who received benefits from Medicare were commonly referred to as Medicare beneficiaries.

## B.   The Conspiracy

6.     Beginning on an unknown date, but at least in or around May 2014, and continuing through and including the date of this Indictment, in the Middle District of Florida and elsewhere,

ANTHONY BALDIZZI,

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, to commit certain offenses against the United States, specifically:

a.              healthcare fraud, in violation of Title 18, United States Code, Section 1347; and

3

b.      the solicitation and receipt of health care kickbacks, in

violation of 42 U.S.C. § 1320a-7b(b)(1)(A).

## C.   Manner and Means

7.      The manner and means by which the defendant and his

coconspirators sought to accomplish the purpose of the conspiracy included,

among other things:

a.      It was a part of the conspiracy that conspirators C.M. and B.N.

would and did own and operate Lifecare in Pinellas County in the Middle District of

Florida.   Lifecare filled retail prescriptions and produced compounded

medications, particularly creams, prescribed by Dr. Anthony Baldizzi and others

that were, in many cases, marketed by Centurion.

b.      It was further part of the conspiracy that conspirators would

and did bill and caused to be billed TRICARE and Medicare for prescriptions for

compounded creams written by Dr. Anthony Baldizzi for TRICARE and Medicare

beneficiaries, which prescriptions were filled at Lifecare.

c.      It was further part of the conspiracy that conspirators

C.M. and B.N. would and did open and control bank accounts in the name of

Lifecare into which funds from TRICARE and Medicare were received as a result

of claims for payment made by conspirators on behalf of Lifecare for prescriptions

for compounded creams written by Dr. Anthony Baldizzi and others.

d.      It was further part of the conspiracy that conspirators at C.M.

and B.N. would and did cause Lifecare to enter into a marketing relationship with

Centurion, whereby Lifecare agreed to pay an illegal kickback to Centurion equal to approximately 50% of the proceeds of claims paid to Lifecare by TRICARE and other health care benefit programs, after expenses, for prescriptions directed by Centurion to Lifecare to be filled.

e.      It was further part of the conspiracy that conspirators would and did cause Centurion to employ sales representatives to recruit patients to be seen by physicians and to provide said patients with preprinted prescriptions featuring compounded medications with high rates of reimbursement for such generalized ailments as pain and scars.   The doctors would and did prescribe for said patients these Centurion- marketed compounded creams, which prescriptions were routed through Centurion to Lifecare to be filled.

f.      It was further part of the conspiracy that conspirators at Lifecare would and did introduce Dr. Anthony Baldizzi to conspirators at Centurion, who began directing Centurion-recruited patients, many of whom were TRICARE beneficiaries, to Dr. Anthony Baldizzi at the walk-in clinic where he worked and elsewhere, to obtain prescriptions for Centurion-marketed compounded creams, which prescriptions were filled at Lifecare.

g.      It was further part of the conspiracy that Dr. Anthony Baldizzi, working with conspirators at Centurion, would and did operate temporary, after-hours, offsite clinics at hotels and retail stores in the Middle District of Florida to see high volumes of Centurion-recruited patients, many of whom were

TRCIARE beneficiaries, and prescribe Centurion-marketed compounding creams, which prescriptions were filled at Lifecare.

h.     It was further part of the conspiracy that conspirators at Lifecare, including C.M. and B.N., and conspirators at Centurion, including F.M. and K.A., would and did agree to pay illegal kickbacks to Dr. Anthony Baldizzi equal to approximately 10% of the after-cost amount of each claim paid by TRICARE, Medicare, and other health care benefit programs for prescriptions for compounded medications written by Dr. Baldizzi and filled by Lifecare for Centurion-recruited patients.   The conspirators agreed that the amount of Dr. Baldizzi's kickbacks would be split evenly between Lifecare (5%) and Centurion (5%).

i.     It was further part of the conspiracy that conspirators would and did agree that Lifecare and C.M. would pay Dr. Anthony Baldizzi his illegal kickbacks by deducting Centurion's portion of the kickbacks (5%) from Centurion's percentage of the proceeds owed to it pursuant to the marketing contract between Lifecare and Centurion, and combining those funds with Lifecare's portion of the illegal kickbacks (5%) due to be paid to Dr. Baldizzi.

j.     It was further part of the conspiracy that Dr. Anthony Baldizzi would and did make periodic demands to conspirator C.M. and others for the payment of kickbacks via telephone calls, text messages, and/or in-person conversations during which Dr. Baldizzi and others, to avoid detection, would and did refer to the payment of kickbacks as delivery of "FedEx packages."

k.     It was further part of the conspiracy that conspirator C.M. and others would and did make cash payments and provide other things of value, including payment for a BMW automobile, to Dr. Anthony Baldizzi as kickbacks for writing prescriptions for compounded creams for Centurion-recruited patients, many of whom were TRICARE beneficiaries, which prescriptions were filled at Lifecare.

l.     It was further part of the conspiracy that conspirators C.M. and B.N. would and did enter into an agreement with Dr. Anthony Baldizzi to pay Dr. Baldizzi illegal kickbacks for prescriptions for compounded creams written by Dr. Baldizzi for non-Centurion recruited patients.   C.M. and B.N. would and did agree to pay Dr. Baldizzi approximately 15% of the after-cost amount of such claims paid by health care benefit programs as a result of prescriptions for compounded medications written by Dr. Baldizzi, and they would and did provide Dr. Baldizzi with cash payments and other things of value in fulfillment of this kickback agreement.

m.     It was further a part of the conspiracy that conspirators and others would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

### D.     Overt Acts

10.     In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed and caused to be committed, within the Middle District of

Florida and elsewhere, the following overt acts, among others:

a.     On or about the dates set forth below, each of which constitutes a separate overt act, defendant ANTHONY BALDIZZI, C.M., and B.N., alone and together with others known and unknown, caused to be submitted the following false and fraudulent claims for reimbursement to TRICARE and Medicare for prescriptions written by defendant BALDIZZI in connection with the receipt of a kickback and in anticipation of receiving a portion of each paid claim:

| OVERT ACT | HEALTH CARE BENEFIT PROGRAM PATIENT | RX CREAMS | CLAIM DATE | APPROX. AMOUNT CLAIMED | APPROX. AMOUNT PAID |
|---|---|---|---|---|---|
| a.1 | Medicare F.W. | Premier Deluxe Scar Cream | 6/27/2014 | $15,943.96 | $77.86 |
| a.2 | Medicare F.W. | FlexRite Pain Cream | 6/27/2014 | $1424.03 | $827.73 |
| a.3 | TRICARE O.P. | FlexRite Pain Cream | 9/22/2014 | $3,968.38 | $3,363.31 |
| a.4 | TRICARE O.P. | Premier Deluxe Scar Cream | 9/22/2014 | $20,179.64 | $17,924.00 |
| a.5 | TRICARE O.P. | Acne Cream Max Strength | 9/22/2014 | $2,256.83 | $1,984.66 |
| a.6 | TRICARE T.A. | Premier Deluxe Scar Cream | 10/3/2014 | $20,179.64 | $17,924.00 |
| a.7 | TRICARE T.A. | Acne Cream Max Strength | 10/3/2014 | $2,984.21 | $2,181.11 |
| a.8 | TRICARE L.F. | Anti-Aging Cream | 10/13/2014 | $2,081.68 | $1,834.27 |
| a.9 | TRICARE L.F. | FlexRite Pain Cream | 10/13/2014 | $3,403.32 | $2,951.72 |

| OVERT ACT | HEALTH CARE BENEFIT PROGRAM PATIENT | RX CREAMS | CLAIM DATE | APPROX. AMOUNT CLAIMED | APPROX. AMOUNT PAID |
|---|---|---|---|---|---|
| a.10 | TRICARE L.F. | Premium Scar Deluxe Cream | 10/13/2014 | $20,578.88 | $17,572.61 |
| a.11 | TRICARE L.F. | Migraine Cream Max | 10/13/2014 | $2,798.39 | $2,436.37 |
| a.12 | TRICARE S.W. | FlexRite Pain Cream | 10/16/2014 | $5,366.04 | $4,515.49 |
| a.13 | TRICARE S.W. | Premier Deluxe Scar Cream | 10/16/2014 | $20,578.88 | $17,572.61 |
| a.14 | TRICARE R.A. | FlexRite Pain Cream | 10/16/2014 | $3,403.32 | $2,956.11 |
| a.15 | TRICARE R.A. | Premium Scar Deluxe Cream | 10/16/2014 | $20,578.88 | $17,572.61 |
| a.16 | TRICARE R.A. | Migraine Cream Max | 10/16/2014 | $2,798.39 | $2,436.37 |
| a.17 | TRICARE I.V. | FlexRite Pain Cream | 10/16/2014 | $5,366.04 | $4,515.49 |
| a.18 | TRICARE I.V. | Premium Scar Deluxe Cream | 10/16/2014 | $13,719.25 | $11,735.29 |
| a.19 | TRICARE I.V. | Migraine Cream Max | 10/16/2014 | $2,798.39 | $2,436.37 |
| a.20 | TRICARE A.M. | Premier Deluxe Scar Cream | 10/28/2014 | $20,689.47 | $17,572.61 |
| a.21 | TRICARE A.M. | FlexRite Pain Cream | 10/28/2014 | $5,378.42 | $4,515.49 |

b.  On or about December 3, 2014, C.M. wrote a check to Bert Smith BMW for $71,900 from C.M.'s Wells Fargo Account ending in -5756, which was funded entirely with proceeds from the operation of Lifecare, to pay for a BMW for

defendant ANTHONY BALDIZZI in partial satisfaction of kickbacks owed to defendant BALDIZZI by Lifecare and Centurion.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH TWENTY-TWO
### (Healthcare Fraud)

### A. Introduction

1.     The Grand Jury hereby re-alleges Paragraphs 1 through 5 of Count One of this Indictment and incorporates by reference those paragraphs as though fully set forth herein.

### B. The Scheme and Artifice

2.     Beginning on an unknown date, but at least as early as in or around May 2014, and continuing through and including the date of this Indictment, in the Middle District of Florida and elsewhere,

### ANTHONY BALDIZZI,

the defendant herein, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud TRIACARE and Medicare, both healthcare benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, TRICARE and Medicare.

### C.   Manner and Means of the Scheme and Artifice

3.      The substance of the manner and means of the scheme and artifice

to defraud is described in Paragraphs 7(a) through (m) of Count One of this

Indictment, which are re-alleged and incorporated by reference as though fully set

forth herein.

### D.   Execution of the Scheme and Artifice

4.      On or about the dates set forth below, in the Middle District of Florida

and elsewhere, for the purpose of executing, attempting to execute, and aiding

and abetting the execution of the aforesaid scheme and artifice to defraud

TRICARE and Medicare, both healthcare benefit programs affecting commerce,

as defined in Title 18, United States Code, Section 24(b), and to obtain, by means

of materially false and fraudulent pretenses, representations, and promises,

money and property owned by, and under the custody and control of TRICARE

and Medicare, the defendant herein did cause to be submitted the following false

and fraudulent claims for reimbursement to TRICARE and Medicare for

prescriptions written by him in connection with the receipt of a kickback and in

anticipation of receiving a portion of each paid claim:

| COUNT | HEALTH CARE BENEFIT PROGRAM PATIENT | RX CREAMS | CLAIM DATE | APPROX. AMOUNT CLAIMED | APPROX. AMOUNT PAID |
|---|---|---|---|---|---|
| TWO | Medicare F.W. | Premier Deluxe Scar Cream | 6/27/2014 | $15,943.96 | $77.86 |
| THREE | Medicare F.W. | FlexRite Pain Cream | 6/27/2014 | $1424.03 | $827.73 |

11

| COUNT | HEALTH CARE BENEFIT PROGRAM PATIENT | RX CREAMS | CLAIM DATE | APPROX. AMOUNT CLAIMED | APPROX. AMOUNT PAID |
|---|---|---|---|---|---|
| FOUR | TRICARE O.P. | FlexRite Pain Cream | 9/22/2014 | $3,968.38 | $3,363.31 |
| FIVE | TRICARE O.P. | Premier Deluxe Scar Cream | 9/22/2014 | $20,179.64 | $17,924.00 |
| SIX | TRICARE O.P. | Acne Cream Max Strength | 9/22/2014 | $2,256.83 | $1,984.66 |
| SEVEN | TRICARE T.A. | Premier Deluxe Scar Cream | 10/3/2014 | $20,179.64 | $17,924.00 |
| EIGHT | TRICARE T.A. | Acne Cream Max Strength | 10/3/2014 | $2,984.21 | $2,181.11 |
| NINE | TRICARE L.F. | Anti-Aging Cream | 10/13/2014 | $2,081.68 | $1,834.27 |
| TEN | TRICARE L.F. | FlexRite Pain Cream | 10/13/2014 | $3,403.32 | $2,951.72 |
| ELEVEN | TRICARE L.F. | Premium Scar Deluxe Cream | 10/13/2014 | $20,578.88 | $17,572.61 |
| TWELVE | TRICARE L.F. | Migraine Cream Max | 10/13/2014 | $2,798.39 | $2,436.37 |
| THIRTEEN | TRICARE S.W. | FlexRite Pain Cream | 10/16/2014 | $5,366.04 | $4,515.49 |
| FOURTEEN | TRICARE S.W. | Premier Deluxe Scar Cream | 10/16/2014 | $20,578.88 | $17,572.61 |
| FIFTEEN | TRICARE R.A. | FlexRite Pain Cream | 10/16/2014 | $3,403.32 | $2,956.11 |
| SIXTEEN | TRICARE R.A. | Premium Scar Deluxe Cream | 10/16/2014 | $20,578.88 | $17,572.61 |
| SEVENTEEN | TRICARE R.A. | Migraine Cream Max | 10/16/2014 | $2,798.39 | $2,436.37 |

| COUNT | HEALTH CARE BENEFIT PROGRAM PATIENT | RX CREAMS | CLAIM DATE | APPROX. AMOUNT CLAIMED | APPROX. AMOUNT PAID |
|---|---|---|---|---|---|
| EIGHTEEN | TRICARE I.V. | FlexRite Pain Cream | 10/16/2014 | $5,366.04 | $4,515.49 |
| NINETEEN | TRICARE I.V. | Premium Scar Deluxe Cream | 10/16/2014 | $13,719.25 | $11,735.29 |
| TWENTY | TRICARE I.V. | Migraine Cream Max | 10/16/2014 | $2,798.39 | $2,436.37 |
| TWENTY-ONE | TRICARE A.M. | Premier Deluxe Scar Cream | 10/28/2014 | $20,689.47 | $17,572.61 |
| TWENTY-TWO | TRICARE A.M. | FlexRite Pain Cream | 10/28/2014 | $5,378.42 | $4,515.49 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT TWENTY-THREE
### (Illegal Monetary Transaction)

### A.   Introduction

1.      The Grand Jury hereby re-alleges Paragraphs 1 through 5 of Count One of this Indictment and incorporates by reference those paragraphs as though fully set forth herein.

### B.   Execution

2.      On or about December 3, 2014, in the Middle District of Florida and elsewhere,

ANTHONY BALDIZZI,

the defendant herein, did knowingly engage and attempt to engage in a monetary transaction, and aided and abetted others in engaging in a monetary transaction,

in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, specifically, the purchase of a 2015 BMW M3 for approximately $72,900, which property was, in fact, derived from a specified unlawful activity, namely, healthcare fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT TWENTY-FOUR
### (Solicitation or Receipt of Health Care Kickback)

### A. Introduction

1.     The Grand Jury hereby re-alleges Paragraphs 1 through 5 of Count One of this Indictment and incorporates by reference those paragraphs as though fully set forth herein.

### B. Execution

2.     On or about December 3, 2014, in the Middle District of Florida and elsewhere,

ANTHONY BALDIZZI,

the defendant herein, did knowingly and willfully solicit and receive remuneration, specifically a 2015 BMW M3, in return for referring patients to Lifecare for the furnishing and arranging for the furnishing of prescription compounded medications, for which payment may be made in whole or in part under TRICARE and Medicare, both of which were federal health care programs.

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT TWENTY-FIVE
### (False Statements)

On or about May 21, 2015, in the Middle District of Florida and elsewhere,

**ANTHONY BALDIZZI,**

the defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States by making false statements at the defendant's residence in St. Petersburg, Florida, to agents of the Federal Bureau of Investigation denying that he received kickbacks in the form of money or other things of value in connection with the writing of prescriptions for compounded medications filled at Lifecare Pharmacy.   The statements and representations were false because, as ANTHONY BALDIZZI then and there knew, he received and made demands for kickbacks in the form of cash and other things of value in exchange for the writing of prescriptions for compounded medications filled at Lifecare Pharmacy.

In violation of Title 18, United States Code, Section 1001(a)(2).

### FORFEITURE

1.     The allegations contained in Count One through Twenty-Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

2.      Upon his conviction of a federal health care offense, or conspiracy to commit such an offense, as alleged in Counts One through Twenty-Two and Twenty-Four of this Indictment, the defendant,

ANTHONY BALDIZZI,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.      Upon conviction of the violation of Title 18, United States Code, Section 1957, as alleged in Count Twenty-Three of this Indictment, the defendant,

ANTONY BALDIZZI,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.      The specific property to be forfeited includes, but is not limited to, the following:

(a)      a money judgment of at least $5.3 million; and

(b)      the 2015 BMW M3, Vehicle Identification No. WBS3C9C57FP804126.

5.      If any of the property described above, as a result of any act or omission of either defendant:

a.      cannot be located upon the exercise of due diligence;

16

b.      has been transferred or sold to, or deposited with a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or,

e.      has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

under the provisions of Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

_____
Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
Amanda L. Riedel
Assistant United States Attorney

By: _____
Megan K. Kistler
Assistant United States Attorney

By: _____
Robert A. Mosakowski
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
APR 1991

No.

**UNITED STATES DISTRICT COURT**
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

ANTHONY BALDIZZI

**INDICTMENT**

Violations:

18 U.S.C. §§ 371, 1347, 1957, 1001 and 42 U.S.C. § 1320a-7b(b)(1)(A)

A true bill,

_____
Foreperson

Filed in open court this 15th day

of June 2016.

_____
Clerk

Bail $_____

GPO 863 525

L:\_Cases\Criminal Cases\B\BALDIZZI, Anthony_2016R00279_ALR\I_Indictment Back cover.docx